IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

_____

| | | |
|---|---|---|
| BRANDON CALLIER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:22-CV-00100-DG |
| LOANDEPOT.COM, LLC Delaware limited liability company, | § § § | |
| Defendants. | § § § § | |

_____

## DEFENDANT LOANDEPOT.COM, LLC'S MOTION TO DISMISS THE LAWSUIT FOR FAILURE TO STATE A CLAIM

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION                                                                      1

II.     FACTS                                                                            2

III.    RULE 12(B)(6) STANDARD                                                           3

IV.     ARGUMENT                                                                         3

        *Plaintiff's DNC claims fails as to all calls made after February 1, 2022, as the
        complaint lacks facts demonstrating that Plaintiff did not make an "inquiry"
        enabling such calls.* ..................................................................3

        *Plaintiff's internal DNC claim should be dismissed for lack of standing.* ...................5

        *Plaintiff's regulated technology claims must be dismissed for failure to allege
        the use of an ATDS or prerecorded/artificial voice call.* ................................5

        *Plaintiff's Texas state law claim fails because it is derivative of his federal law
        claims, all of which must be dismissed.* ...................................................7

V.      REQUEST FOR RELIEF                                                               7

---

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Ananthapadmanabhan v. BSI Financial Services, Inc.,*
  2015 WL 8780579 (N.D.Ill. 2015) ......................................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................... 3

*Barnett v. First Nat'l Bank of Omaha,*
  Civil Action No. 3:20-cv-337-CHB, 2022 U.S. Dist. LEXIS 37563 (W.D. Ky.
  Mar. 3, 2022) ..................................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................... 3

*Borden, v. Efinancial, LLC,*
  Case No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086 (W.D. Wash. Aug. 13,
  2021) ...................................................................................................................... 6

*Brickman v. Facebook, Inc.,*
  Case No. 16-cv-00751-WHO, 2021 U.S. Dist. LEXIS 175700 (N.D. Cal. Sept.
  15, 2021) ................................................................................................................ 6

*Cordoba v. DIRECTV, LLC,*
  942 F.3d 1259 (11th Cir. 2019) ............................................................................. 5

*Eggleston v. Reward Zone USA LLC,*
  2:20-cv-01027-SVW-KS, 2022 U.S. Dist. LEXIS 20928 (C.D. Cal. Jan. 28, 2022) ......................... 5

*Facebook, Inc. v. Duguid,*
  141 S. Ct. 1163 (2021) ....................................................................................... 5, 6

*Gager v. Dell Fin. Servs.,*
  LLC, 727 F.3d 265 (3d Cir. 2013) ......................................................................... 3

*Garfield v. Shutterfly, Inc.,*
  No. 20-2249, 2021 WL 2026854 (3d Cir. May 21, 2021) ...................................... 7

*Greene v. Select Funding,*
  LLC, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ......................... 3

*Hunsinger v. Alpha Cash Buyers, LLC,*
  Civil Action No. 3:21-CV-1598-D, 2021 U.S. Dist. LEXIS 209119 (N.D. Tex.
  Oct. 29, 2021) ........................................................................................................ 6

*Johansen v. Efinancial LLC,*
   No. 220CV01351RAJBAT, 2021 WL 7161969 (W.D. Wash. June 11, 2021) ...................................4

*Oliver v. DirecTV, LLC,*
   No. 14–cv–7794, 2015 WL 1727251 (N.D.Ill. Apr. 13, 2015) ...........................................................7

*Ricky Franklin v. Upland Software, Inc.,*
   Case No. 1-18-cv-00236, 2019 U.S. Dist. LEXIS 16938 (W.D. Tex. Feb. 1, 2019) ....................1, 4

**Statutes**

47 U.S.C. § 227 .............................................................................................................................................7

47 U.S.C. § 227(b) ....................................................................................................................................5, 7

Texas Business and Commerce Code § 305.053 ......................................................................................7

**Other Authorities**

47 C.F.R. § 64.1200(d) ................................................................................................................................5

47 C.F.R. § 64.1200(f)(15) ..........................................................................................................................3

Federal Rules of Civil Procedure
   Rule 12(b)(6) ...........................................................................................................................................3

The Court should dismiss Plaintiff's lawsuit because the allegations in his Second Amended Complaint remain legally insufficient to state a claim for relief.

## I.   INTRODUCTION

Plaintiff Brandon Callier—a rampant litigation offender who has filed dozens of TCPA lawsuits in the past year—sues loanDepot over a series of calls he received during a one-month period in early 2022.

While Plaintiff characterizes the calls as having been made by nameless telemarketers hired to blind-fire messages on behalf of Defendant loanDepot.com, LLC, the specific alleged facts regarding the calls and texts at issue tell a different story.

Rather, Plaintiff alleges the receipt of merely a single call from an unnamed third-party before he was transferred to loanDepot. Then after a discussion with loanDepot—which he fails to address in his allegations—he allegedly received 12 additional contacts, which he also sues for.

Given Plaintiff's litigation history with the TCPA—again he is one of the country's most prolific serial TCPA plaintiffs—there can be no question that Plaintiff knows how to ask for calls to cease if he does not want to receive them. It has been held that where a repeat TCPA player elects to continue receiving calls and texts that he knows how to cease, then not only can the Plaintiff not recover for those calls, the failure to request that such calls stop actually potentially constitutes an act of fraud.[1]

*Here,* the facts will show that not only did Plaintiff fail to request that calls cease, he affirmatively invited them in his discussion with loanDepot. While the Court is limited in its review at the pleadings stage, Plaintiff's failure to allege the specific facts occurring on the February 1, 2022 discussion with loanDepot is sufficient to warrant dismissal of the case.

---

[1] *Ricky Franklin v. Upland Software, Inc.*, Case No. 1-18-cv-00236, 2019 U.S. Dist. LEXIS 16938, at *10-11 (W.D. Tex. Feb. 1, 2019).

## II.   FACTS

Brandon Callier is a serial TCPA Plaintiff who has filed approximately 61 similar cases in this Court in the last year.[2]

Notably, Plaintiff has never prevailed at trial or earned a judgment, other than by default. Rather, his modus operandi is to file a case, shake a defendant down for a settlement, and then move on to his next victim.

To be sure, the mere fact that a plaintiff has filed many cases does not mean that his present case lacks merit. However, the allegations of the Complaint in this case—a jumbled mash of allegations hewn together from other cases—demonstrate that Plaintiff has failed to allege a plausible claim for relief.

While Plaintiff makes several boilerplate and conclusory assertions regarding his lack of a business relationship with loanDepot,[3] he admits that he engaged in a telephone call with loanDepot on February 1, 2022.[4] He admits that the purpose of the call was to discuss the refinancing of his home.[5] He does not otherwise allege what took place during that call, however.

Plaintiff then received 12 calls directly from loanDepot after his February 1, 2022 conversation. All calls came from the same number—loanDepot was not trying to hide its identity and was plainly attempting to contact Plaintiff as part of a continuation of the February 1, 2022 conversation.

Before the February 1, 2022 call, Plaintiff received only two calls—both on the same day. According to Plaintiff one call was "attempted" to be transferred to loanDepot—although he does

---

[2] Def.'s Request for Judicial Notice filed together with this motion.

[3] Compl., ¶¶ 22-26.

[4] Compl., ¶ 32.

[5] Compl., ¶ 26.

**LOANDEPOT'S MOTION TO DISMISS**                                        PAGE 2

not allege how he knows that. The second call was successfully transferred to loanDepot resulting in the calls at issue.

### III.    RULE 12(B)(6) STANDARD

Rule 12(b)(6) standard allows a defendant to challenge the legal sufficiency of the allegations asserted in a complaint.[6] While well-pleaded facts must be accepted as true, factual and legal conclusions need not be.[7] Mere recitations of elements are not sufficient to state a claim.[8] And ultimately, a plaintiff must demonstrate a plausible claim for relief to overcome a motion to dismiss.[9]

### IV.    ARGUMENT

***Plaintiff's DNC claims fails as to all calls made after February 1, 2022, as the complaint lacks facts demonstrating that Plaintiff did not make an "inquiry" enabling such calls.***

A Plaintiff may sue if he receives one or more "telephone solicitation" calls to a residential number on the national Do Not Call registry within a 12-month period.[10] A "telephone solicitation" is defined as a call made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services."[11] Notably, a caller does not have to have actually done business with a consumer for an inquiry to have been generated—all that is required is that the consumer express interest in the caller's products or services.[12]

*Here,* Plaintiff alleges that loanDepot made phone calls to him following his February 1, 2022

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[8] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

[9] *Iqbal,* 556 U.S. at 678.

[10] *Greene v. Select Funding,* LLC, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at *2 (C.D. Cal. Feb. 5, 2021).

[11] 47 C.F.R. § 64.1200(f)(15).

[12] *Gager v. Dell Fin. Servs.,* LLC, 727 F.3d 265, 273 (3d Cir. 2013).

conversation with a loan officer, but he fails to allege facts plausibly demonstrating that those calls were made without an inquiry. Indeed, Plaintiff has alleged nothing regarding the content of that call other than that it involved potential refinancing of his home. In the absence of any allegations—i.e., those showing he asked for calls to stop or otherwise expressed a lack of interest—the only reasonable inference to be drawn from the facts are that Callier showed interest in loanDepot's products and services in that call.[13]

Repeat TCPA players manufacturing TCPA lawsuits by inviting additional or further calls is nothing new.[14] Indeed, the phenomenon has been documented on numerous occasions.[15] And Mr. Callier is an extremely well-known repeat-filer with dozens of cases under his belt.

While an ordinary TCPA Plaintiff might be forgiven for failing to allege the content of a critical call that pre-dated the bulk of the allegedly TCPA-violating conduct the Plaintiff complains of, a higher standard is applicable to a litigant like Mr. Callier who knows well to cease calls he does not desire—and how to creatively allege facts to survive the pleadings stage. Indeed, at least one court in this district has held that conduct akin to Mr. Callier's may constitute fraud.[16]

While loanDepot does not ask that Mr. Callier be sanctioned or found to have committed

---

[13] Although these facts are beyond the pleadings, loanDepot represents that a call recording of the February 1, 2022 call is available, and in it Plaintiff directly advises loanDepot he is interested in a loan to take cash out for a pool. The call ends with Plaintiff advising that he cannot complete the loan application because he is late to a meeting but promises to call back to complete the transaction. The loan officer assisting him sent him a text during the call—to which Plaintiff did not object at the time—in order to assure that the two would be in direct communication after Plaintiff completed his meeting.

[14] *E.g., Johansen v. Efinancial LLC,* No. 220CV01351RAJBAT, 2021 WL 7161969, at *9 (W.D. Wash. June 11, 2021) (granting summary judgment where Plaintiff filed at least 39 other TCPA cases in the last six years and had no desire to enroll in the company's services).

[15] *Id.*

[16] *Upland*, Case No. 1-18-cv-00236, 2019 U.S. Dist. LEXIS 16938, at *10-11.

any fraud at this stage of the proceeding, it does ask that the DNC portion of the case (Count 1) be dismissed for all calls made by loanDepot after the enigmatic call between it and Plaintiff on February 1, 2022.

### *Plaintiff's internal DNC claim should be dismissed for lack of standing.*

Plaintiff alleges loanDepot violated CFR § 64.1200(d) (Count II) by failing to have an internal DNC policy in place prior to making marketing calls.

Plaintiff is, again, wrong on the facts. But accepting these allegations as true, he nonetheless lacks standing to assert this claim because he does not allege that he, himself, requested that calls cease.[17] Accordingly, the claim must be dismissed.

### *Plaintiff's regulated technology claims must be dismissed for failure to allege the use of an ATDS or prerecorded/artificial voice call.*

Plaintiff asserts that loanDepot violated 47 U.S.C. Section 227(b) (Count III), however he fails to assert specific facts establishing such a violation.

A Section 227(b) claim requires that a caller use either an automatic telephone dialing system (ATDS) to make calls or texts or engage a pre-recorded or artificial voice message.[18] Plaintiff alleges none of these.

*First,* a review of Plaintiff's alleged chart of purportedly problematic calls does not reflect receipt of a single pre-recorded or artificial voice call.[19] All calls were either live answered, missed calls, or text messages.[20]

---

[17] *E.g., Cordoba v. DIRECTV, LLC,* 942 F.3d 1259 (11th Cir. 2019) (holding individuals who do not allege they asked for calls to cease lack Article III standing to assert such a claim).

[18] *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1164 (2021).

[19] Compl., Table A.

[20] Text messages do not constitute the use of a prerecorded/artificial voice. *Eggleston v. Reward Zone USA LLC,* 2:20-cv-01027-SVW-KS, 2022 U.S. Dist. LEXIS 20928 (C.D. Cal. Jan. 28, 2022)).

*Second,* Plaintiff does not allege the use of an ATDS by loanDepot. To qualify as an ATDS a device must use a *random* or *sequential* number generator to store or produce telephone numbers to be dialed.[21] Hence, where a Complaint facially demonstrates that phone numbers were not randomly dialed but, instead, that calls were targeted, a 227(b) claim is properly dismissed.[22] For instance, in *Hunsinger*,[23] text messages were received after Hunsinger had spoken with an Alpha Cash agent several times by telephone and the contents of the text messages suggested that they were sent with the purpose of following-up on those prior telephonic interactions. Similarly, in *Borden*,[24] the court found that the fact that plaintiff admitted he was called only because he supplied his number to caller was dispositive on the issue, as *Duguid* requires the use of a random or sequential number generator to create numbers to be called.

*Here,* as in *Hunsinge*r and *Borden*, the Plaintiff alleges that he spoke with loanDepot before calls were made by loanDepot specifically to his number. As such, Plaintiff's 227(b) claims must be dismissed as to all calls made after February 1, 2022.

Even as to the calls pre-dating February 1, 2022, however, Plaintiff alleges nothing regarding the technology used to make the calls at issue. In the absence of such allegations, Plaintiff cannot

---

[21] *Duguid*, 141 S. Ct. 1163, 1164; *Barnett v. First Nat'l Bank of Omaha*, Civil Action No. 3:20-cv-337-CHB, 2022 U.S. Dist. LEXIS 37563, at *5-6 (W.D. Ky. Mar. 3, 2022).

[22] *E.g., Brickman v. Facebook, Inc.*, Case No. 16-cv-00751-WHO, 2021 U.S. Dist. LEXIS 175700 (N.D. Cal.   Sept. 15, 2021) (*Facebook* birthday text messages were sent to numbers culled from user profiles—i.e., an existing list. The numbers dialed were not randomly or sequentially generated. Even if the text sequence were determined using an R&SNG that is not enough—only the use of an R&SNG to generate phone numbers is sufficient to trigger TCPA).

[23] *Hunsinger v. Alpha Cash Buyers, LLC*, Civil Action No. 3:21-CV-1598-D, 2021 U.S. Dist. LEXIS 209119 (N.D. Tex.   Oct. 29, 2021).

[24] *Borden, v. Efinancial, LLC*, Case No. C19-1430JLR, 2021 U.S. Dist. LEXIS 153086 (W.D. Wash. Aug. 13, 2021).

---

**LOANDEPOT'S MOTION TO DISMISS**                                                     PAGE 6

sustain a 227(b) claim respecting any calls alleged in the Complaint.[25]

***Plaintiff's Texas state law claim fails because it is derivative of his federal law claims, all of which must be dismissed.***

Plaintiff asserts that loanDepot violated the Texas Business and Commerce Code § 305.053 (Count IV), however, he fails to assert specific facts establishing such a violation.

Texas Business and Commerce Code § 305.053 creates a cause of action for anyone "who receives a communication that violates 47 U.S.C. Section 227." As such, Plaintiff's Texas state law claim is wholly derivative of Plaintiff's 47 U.S.C. § 227 claim.

*Here,* because Plaintiff failed to assert specific facts that loanDepot violated 47 U.S.C. § 227(b), it follows that Plaintiff also failed to assert specific facts under its state law counterpart.

## V.   REQUEST FOR RELIEF

For the foregoing reasons, the Complaint—and its each separate claim—must be dismissed. Moreover, the dismissal should be with prejudice as to Count II and III, as no additional facts can change the result.[26]

---

[25] *E.g., Ananthapadmanabhan v. BSI Financial Services, Inc.*, 2015 WL 8780579, at *4 (N.D.Ill. 2015) (quoting *Oliver v. DirecTV, LLC*, No. 14–cv–7794, 2015 WL 1727251, at *3 (N.D.Ill. Apr. 13, 2015) (holding a plaintiff must plead additional, independent facts that "suggest beyond the speculative level that Defendant actually used an ATDS").

[26] *Garfield v. Shutterfly, Inc.,* No. 20-2249, 2021 WL 2026854 (3d Cir. May 21, 2021) (dismissing the case with prejudice where no additional facts could give rise to a valid claim).

Respectfully submitted,

*/s/ Robert A. Hawkins*
Robert A. Hawkins
Texas State Bar No. 24069785
robert.hawkins@squirepb.com
Ekaterina G. Long
Texas Bar No. 24102700
ekaterina.long@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2000 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: 214-758-1500
Facsimile: 214-758-1550

and

*/s/ Eric J. Troutman*
Eric J. Troutman
California Bar No. 229263
troutman@troutmanfirm.com
TROUTMAN FIRM
530 Technology Drive, Suite 200
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile:  (949) 203-8689

***Attorneys for Defendant loanDepot.com, LLC***

**Certificate of Service**

I certify that on May 24th, 2022, my office served a true and correct copy of the foregoing via the Court's CM/ECF system and by mailing it via Certified Mail Return Receipt Requested to Plaintiff's last known address as follows:

Brandon Callier
6336 Franklin Trail
El Paso, Texas 79912


_/s/ Ekaterina G. Long_
**Ekaterina G. Long**